**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LG ELECTRONICS INC. AND LG ELECTRONICS ALABAMA, INC., | |
| *Plaintiffs*, | Case No. 1:21-cv-2600 |
| v. | Judge: Mary M. Rowland |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, | Magistrate Judge: Heather K. McShain |
| *Defendants*. | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
RENEWED MOTION FOR A PRELIMINARY INJUNCTION**

████████████

# TABLE OF CONTENTS

I.      INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.     FACTUAL BACKGROUND ........................................................................................ 3

        A.      LG Electronics, LG Electronics Alabama, and the '984 Patent ............................ 3

        B.      The Defendants ................................................................................................ 4

III.    LEGAL STANDARDS ................................................................................................ 6

IV.     ARGUMENT .............................................................................................................. 7

        A.      LGE has already made a strong showing of likelihood of success on the
                merits.............................................................................................................. 7

                1.      LGE is likely to succeed on the infringement claims ................................. 8

                2.      Defendants' attempts to argue non-infringement and invalidity do
                        not rise to the level of a "substantial question" sufficient to defeat
                        LGE's strong showing of likelihood of success ...................................... 19

        B.      Defendants' actions have and will continue to irreparably harm LGE................. 24

        C.      There is no adequate remedy at law to address LGE's irreparable harm ............. 26

        D.      The balance of equities favors LGE.................................................................... 28

        E.      Public interest favors a preliminary injunction................................................... 29

V.      CONCLUSION............................................................................................................ 30

███████

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Abbott Laboratories v. Mead Johnson & Co.*,
  971 F. 2d 6 (7th Cir. 1992) ................................................................................6

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008).....................................................................7, 24

*Apple Inc. v. Samsung Elecs. Co.*,
  809 F.3d 633 (Fed. Cir. 2015)............................................................................29

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010)..........................................................................29

*Cal. Medical Prods., Inc. v. Emergency Medical Prods., Inc.*,
  796 F. Supp. 640 (D.R.I. 1992)...........................................................................29

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*
  664 F.3d 922 (Fed. Cir. 2012)........................................................................25, 26

*Cobraco Mfg. Co. v. Valley View Specialties Co.*,
  No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958 (N.D. Ill. Jan. 19, 1990) ..............29

*Continental Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019)............................................................................20

*Courthouse News Serv. v. Brown*,
  908 F.3d 1063 (7th Cir. 2018) .............................................................................7

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*,
  No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248 (N.D. Ill. Mar. 27, 2013) ..............28

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013)...........................................................................27

*GEFT Outdoors, LLC v. City of Westfield*,
  922 F.3d 357 (7th Cir. 2019), cert. denied sub nom. 140 S. Ct. 268, 205 L. Ed.
  2d 137 (2019)......................................................................................................6

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*,
  549 F.3d 1079 (7th Cir. 2008) .........................................................................6, 28

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)............................................................................28

*Illinois Republican Party v. Pritzker*,
  973 F.3d 760 (7th Cir. 2020) ...................................................................6

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) ...............................................................20

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
  848 F.3d 1358 (Fed. Cir. 2017)................................................................7

*Nat'l Presto Indus. Inc. v. Dazey Corp.*,
  18 U.S.P.Q.2d 1113 (N.D. Ill. 1990) ....................................................30

*Nike, Inc. v. Meitac Int'l Enter. Co.*,
  2:06-CV-00934-PMP-PAL, 2006 U.S. Dist. LEXIS 94662 (D. Nev. 2006)..........................28

*Park v. O-Sung & Co.*,
  No. 97 C 0924, 1997 U.S. Dist. LEXIS 10967 (N.D. Ill. July 23, 1997) ..............................24

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) ...............................................8

*Sanofi-Avenits Deutschland GmbH v. Glenmark Pharm. Inc.*,
  821 F.Supp.2d 681 (D.N.J. 2011) ..........................................................27

*Stone Basket Innovations, LLC v. Cook Medical LLC*,
  892 F.3d 1175 (Fed. Cir. 2018).............................................................24

**Federal Statutes**

35 U.S.C. §§ 102, 103, 112....................................................................22

35 U.S.C. § 112....................................................................................22

35 U.S.C. § 154(a)(1) (2000)................................................................24

35 U.S.C. § 271(a) ..................................................................................8

35 U.S.C. § 282(a) ................................................................................22

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

LGE[1] renews its request for a preliminary injunction to prevent the Defendants identified in Schedule A[2] to the complaint from continuing to infringe U.S. Patent No. 10,653,984 ("the '984 Patent")[3] through prohibited conduct such as importation, sale, or offer for sale of the accused products. Despite having notice of the '984 Patent at least as of the time service of the complaint (and in some instances years before then), Defendants continue to infringe claim 1 of the '984 Patent at least by offering to sell and selling replacement water filters in the United States via Amazon.com. Absent immediate relief, Defendants will continue to sell accused water filters, irreparably harming LGE's goodwill and reputation, and eroding LGE's market share.

LGE is a leading innovator in the home appliance space, having invested significantly in building its reputation for safe, innovative, and reliable products. In just the past twenty years, LGE has built its business through providing quality and innovative products, becoming one of the market leaders. LGE's investment in research and development, as shown through its patent holdings and its high-quality products, lay the foundation for the goodwill and reputation it has earned with customers across the globe.

Defendants place that reputation and goodwill at immediate risk. They sell infringing water filters based on copying LGE's patented invention. Defendants do so without LGE's permission or authorization. Their disregard for LGE's patent rights is clear and troubling, particularly given their knowledge of the '984 Patents and of LGE's patent infringement claims at least as of the time of service of the complaint. The invention claimed in the '984 Patent–an

---

[1] LGE refers to Plaintiffs LG Electronics Inc. ("LGE") and LG Electronics Alabama, Inc. ("LGEAI") collectively.
[2] Other than LQQy, LYLYMX, and Quantum Home Products which have been found in default.
[3] LGE proposes a briefing schedule under which Defendants can submit a response by August 2, and LGE a reply by August 6.

embodiment of which is the LT1000P filter–and Defendants' products are materially the same, and they all infringe claim 1. Those similarities did not arise by happenstance, and Defendants do not hide their motive to profit from LGE's ingenuity. As one grouping of Defendants has even admitted, they had an LG refrigerator (which comes with an LGE filter) when they designed their filter and "built a filter specifically for it, intending to market that filter . . . for that LG fridge." July 9, 2021 Hr. Tr. at 14 (statements from Express Parts !!!, GLACIERFRESH, Kozero Filter, Pureza Filters). Their design "has to be exactly the same [as LGE's] down to the millimeter[.]" July 9, 2021 Hr. Tr. at 16 (statements from Express Parts !!!, GLACIERFRESH, Kozero Filter, Pureza Filters).

In their marketing and advertising of the infringing products, Defendants expressly invoke the name of LGE's "LT1000P" filter in Amazon product listings, leaving customers with the impression that Defendants' products do not meaningfully differ from LGE's genuine water filters. Each and every Defendant expressly references LGE's "LT1000P" filter in their advertisements, and many provide their own confusingly similar product numbers (e.g., "LT1000P," "GF-1000P," "PP-LT1000P," "AQF-1000P," "WD-LT1000P," "MB-LT1000P," "LG LT 1000P," and "AL-1000P"). Each and every sale of these infringing products is at least one less sale LGE would have made but for that infringement. And the number is in the millions of dollars. Based on the discovery Defendants have produced to date, they have ███████████ ███████ infringing water filters since the issuance of the '984 Patent. Putting aside the profits LGE has lost because of the infringement (particularly since Defendants sell their products in some instances at one fifth the price of a genuine LGE filter), Defendants' infringing sales have significantly eroded LGE's market share. They also have irreparably harmed LGE's reputation and goodwill.

2

The potential harm here, however, does not only affect LGE. Water filtration is a public health concern. LGE's genuine water filters undergo extensive verification and validation to ensure they remove lead and other particulates from the water as advertised. LGE's filters adhere to specific standards and certifications that are clearly identified to consumers at the time of sale. Defendants, however, do not adhere to the same standards yet mislead the public when advertising their filters as compliant with the same certifications as LGE.

Because of the ongoing and immediate harm posed by Defendants' activities, and the strength of LGE's infringement claim, LGE respectfully request a preliminary injunction precluding Defendants' continued infringement of the '984 Patent, including the products in Schedule A and mere colorable variations thereof.

## II. FACTUAL BACKGROUND

### A. LG Electronics, LG Electronics Alabama, and the '984 Patent

LGE is one of the most innovative companies in the home appliance industry, including in the area of home refrigerators. It has expended significant resources to develop and commercialize its innovative home appliance products and, in the process, obtained thousands of patents in the field of refrigerator technology. Exhibit A at ¶ 3, Declaration of Kuyoung Son. One of those patents is the '984 Patent, which relates to an innovative water filtration device. It was filed on October 8, 2018, and claims priority to Korean Patent Application No. 10-2016-0034309, filed on March 22, 2016. *See* Exhibit 1,[4] '984 Patent; Exhibit A at ¶ 7, Son Declaration. Thus, the '984 Patent is treated as having a filing date of March 22, 2016.

Replacement water filters are important to LGE's refrigerators sold in the U.S. *Id.* at ¶ 5. To maintain proper operation and safety, customers are asked to replace water filters every six

---

[4] Numbered exhibits refer to the exhibits described in Exhibit C, Declaration of Aidan C. Skoyles. Lettered exhibits A, B, and C refer to the declarations filed with this memorandum.

months. *Id.* Prompt replacement of the water filter ensures the purity, safety, and taste of water provided through the water dispenser and ice maker. *Id.* The LT1000P is an LGE-branded water filter covered by the '984 Patent. *Id*. Genuine LT1000P water filters are widely available in the United States through national, regional, and local authorized dealers including but not limited to Lowe's, Home Depot, BestBuy, Transform (formerly Sears), Plessers.com, Tri-City Sales, Gerhard's, Abt, Jetson, Agren, Zeglin's, and Famous Tate. Exhibit B at ¶ 5. The LGE website in Exhibit 3 provides a searchable database of authorized local service dealers under the "Where to Buy" heading. *Id.* at ¶ 6.

Unauthorized sellers like Defendants are selling infringing water filters via Amazon.com and other platforms. *Id.* at ¶ 7. In 2020 alone, LGE estimates that it lost more than $10M in sales revenue in the United States due to unauthorized sales of water filters that are materially identical to the LT1000P and infringe the '984 Patent. *Id* at ¶ 8.

**B.    The Defendants**

Defendants sell replacements for LGE's LT1000P filter through Amazon.com and possibly other avenues. By including "LT1000P" in their Amazon listings, Defendants' listings appear when customers enter "LT1000P" in the Amazon search bar. *See* Exhibits 2-19. Many Defendants listed in Schedule A also adopt part numbers for their products that mimic or copy LGE's LT1000P designation, including "LT1000P," "GF-1000P," "PP-LT1000P," "AQF1000P," "WD-LT1000P," "MB-LT1000P," "LG LT 1000P," and "AL-1000P." *See id*. And by avoiding the years of R&D and associated expense incurred by LGE, Defendants are able to sell their infringing filters at a fraction of LGE's sale price.

Defendants' actions not only violate LGE's intellectual property rights but may pose health risks to unknowing consumers who purchase and use them. E-commerce sales, including through e-commerce storefronts like Defendants', have sharply increased the shipment of

███████████

unauthorized products into the U.S. Exhibit 20, a Customs and Border Protection ("CBP")

Intellectual Property Seizure Statistics Report for fiscal year 2018, explains that over 90% of all

CBP intellectual property seizures were from small and express shipments, not large shipping

containers. *Id.* at 15. Over 85% of CBP seizures originated from mainland China and Hong

Kong. *See id.* at 16. Infringing products account for billions in economic losses, resulting in tens

of thousands of lost jobs for legitimate businesses and broader economic losses, including lost

tax revenue. *See id.* at 6. Moreover, "experts at U.S. Customs and Border Protection . . . have

difficulty identifying counterfeit water filters." Exhibit 21 at 2.

Here, LGE's safety requirements for their filters include NSF42, NSF53, and NSF401

certifications.[5] *See* Exhibit 22 at 1. Defendants' infringing products do not adhere to the same

safety standards and certifications and take advantage of consumers who are not likely to be

familiar with the relevant standards. With their motion to dissolve the TRO, Defendants Express

Parts !!!, GLACIERFRESH, Kozero Filter, Pureza Filters produced a copy of the NSF

certification for Ningbo Pureza Technology, LLC seeming to indicate their filters hold only NSF

42 certification for "Aesthetic Effects." *See* Exhibit 23. But a review of their own Amazon listing

shows the opposite. For example, the fine print in one of Defendants' Amazon listings states

"Not performance Tested or Certified by NSF." S*ee* Exhibit 15 As another example, Defendants

Qingdao Ecopure Filter Co., Ltd. Qingdao Uniwell Trading Co., Ltd., and Qingdao Maxwell

Commercial and Trading Company Ltd. represented to this Court in their motion to dissolve the

TRO and PI that they are "certified for NSF 42, 53, 401 and 372" D.I. 55 at 11. But their own

exhibits contradict that statement as to the infringing products at issue in this case. Specifically,

in their interrogatory responses, ███████████████    █████████████

---

[5] NSF International is a testing organization unrelated to the National Science Foundation.

██████ Yet, that products is not listed anywhere in the very NSF 53 certification for "Health Effects" they included as an exhibit to their motion to dissolve the TRO and PI. D.I. 55-17 (Ex. 16 to Defendants' Mot.).

## III.     LEGAL STANDARDS

A party seeking a preliminary injunction must make an initial showing that (1) it has some likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; and (3) there is no adequate remedy at law. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S.A., Inc.*, 549 F.3d 1079 (7th Cir. 2008); *see also Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). Although demonstrating a likelihood of success is "a significant burden," "at such a preliminary stage, the applicant need not show that it definitely will win the case." *Id.* "A 'strong' showing thus does not mean proof by a preponderance…[b]ut it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.*

If the moving party makes the initial showing, the court then balances the irreparable harm that the moving party would suffer absent a preliminary injunction against any irreparable harm the nonmoving party would suffer an injunction were granted. *Id.* "This Circuit employs a sliding scale approach for this balancing: if a plaintiff is more likely to win, the balance of harms can weigh less heavily in its favor, but the less likely a plaintiff is to win the more that balance would need to weigh in its favor." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019), cert. denied sub nom. 140 S. Ct. 268, 205 L. Ed. 2d 137 (2019) (internal citations and quotations omitted); *see also Abbott Laboratories v. Mead Johnson & Co.*, 971 F. 2d 6, 12 (7th Cir. 1992) (emphasis added). Finally, the court asks "whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties." *Courthouse*

■■■■■■■■■■

*News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). "Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted." *Id*.

In the patent context, "[a] party may establish a likelihood of success by showing that at least one valid and enforceable patent claim is likely to be infringed. *Metalcraft of Mayville, Inc. v. The Toro Co*., 848 F.3d 1358, 1368 (Fed. Cir. 2017) (internal citation omitted) (affirming grant of a preliminary injunction in the patent context). In terms of the remaining factors relevant to a preliminary injunction, "[t]he essential attribute of a patent grant is that it provides a right to exclude competitors from infringing the patent [and i]n view of that right, ***infringement may cause a patentee irreparable harm*** not remediable by a reasonable royalty." *Acumed LLC v. Stryker Corp*., 551 F.3d 1323, 1328–29 (Fed. Cir. 2008) (emphasis added) (internal citation omitted). Further, "[w]here the injury cannot be quantified, no amount of money damages is calculable, and therefore the harm cannot be adequately compensated and is irreparable." *Metalcraft of Mayville, Inc..*, 848 F.3d 1358, 1368 (Fed. Cir. 2017).

## IV.    ARGUMENT

### A.    LGE has already made a strong showing of likelihood of success on the merits

As the Federal Circuit has found in the preliminary injunction context for patent infringement actions:

> With respect to establishing a likelihood of success on the merits, "the patentee seeking a preliminary injunction in a patent infringement suit must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." An accused infringer "can defeat a showing of likelihood of success on the merits by demonstrating a substantial question of validity or infringement."

*Tinnus Enterprises, LLC*, 846 F.3d at 1202 (internal citations omitted).

███████

Here, LGE has already provided a detailed chart explaining how each and every element of claim 1 of the '984 Patent, directed to the boundaries of the patented invention, is included in Defendants' accused products, thus infringing the patent. *See* Exhibits 27-29.[6] As shown in detail below, LGE submits that the Court's findings on likelihood of success should stand.

### 1.     LGE is likely to succeed on the infringement claims

LGE is likely to succeed on the merits of its patent infringement claim. A defendant infringes a patent if it "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor." 35 U.S.C. § 271(a). "An infringement analysis involves the two-step process of 'construing the claims and comparing the properly construed claims to the accused products." *Tinnus Enterprises, LLC*, 846 F.3d at 1203 (affirming the district court's grant of a preliminary injunction and rejecting the defendant's argument that the district court failed to construe certain claim terms at issue in its analysis).

Under the first step (construing the claims), claim terms are given their plain and ordinary meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Here too, the plain and ordinary meaning of terms of claim 1 apply, as Defendants concede.

Under the second step (comparing the claims to the accused products), Defendants' replacement filters infringe claim 1 of the '984 Patent, as shown in the claim charts submitted with the complaint and attached to this motion. *See* Exhibits 27-29. Three variations of the same

---

[6] Also this Court has already found LGE is likely to succeed on the merits. D.I. 21 (granting a TRO and stating that Defendants have "caused Plaintiffs substantial injury in the State of Illinois by marketing, selling, and delivering products that infringe U.S. Patent No. 10,653,984 . . . "), 29 (granting a preliminary injunction and making the same findings with respect to Defendants' infringement), 100 at n3 (explaining that while "the Court [] expressed skepticism about LGE's likelihood of success on the merits[, t]he defendants, however, have yet to raise any 'substantial question' concerning the validity of the patent,' and their filter appears to be nearly identical to the one described by the '984 Patent.'") (internal citations omitted).

water filter design are at issue across all Defendants, but all variations contain every element of claim 1, which is all that is required to show infringement of the '984 Patent. The variations in the Defendants' filters are immaterial to and do not change the infringement analysis. For convenience, LGE has grouped Defendants' filters into the Pureza,[7] Yunda,[8] and Ecopure[9] groups. The Bringpure filter sold by "ICE water filter"[10] exemplifies all the Pureza group filters and is described in detail in the following paragraphs. *See* Exhibit 30.

The preamble to claim 1 of the '984 Patent recites "[a] filter assembly." Exhibit 1 at 25:44. As the representative image below shows, the Bringpure filter product is a filter assembly. *See also generally* Exhibit 30. The claimed "filter assembly" is synonymous with what the '984 Patent calls a filter. *See* Exhibit 1 at 7:6-19, Fig. 4 (elements 401, 402, and 403).

---

[7] The "Pureza" group defendants include Shenzen Hangling E-commerce co., Ltd. d/b/a Best Belvita and Dongyang Zhangping Leather Co., Ltd., d/b/a Ice Water, Express Parts LLC d/b/a as Express Parts !!!, Shanghai Yu Tian Qi Technology Co., Ltd. d/b/a as GLACIERFRESH, Ninbo Haishu Keze Replacement Equipment Co., Ltd d/b/a as Kozero Filter, Ninbo Haishu Bichun Technology Co., Ltd d/b/a as Pureza Filters.

[8] The "Yunda" group defendants include W&L Trading LLC d/b/a as AQUALINK, Top Pure (USA) Inc. d/b/a as ICE PURE; Tianjin Tianchuang Best Pure Environmental Science and Technology Co., Ltd. d/b/a as HEALTHY HOME~ d/b/a GOLDEN ICEPURE. and Yunda H&H Tech (Tianjin) Co., Ltd. d/b/a as PUREPLUS.

[9] The "Ecopure" group defendants include Qingdao Ecopure Filter Co. Ltd., Qingdao Maxwell Commercial and Trading Company Ltd., and Qingdao Youniwei Trading Co., Ltd.

[10] The Bringpure filter is sold by "ICE water filter" with Merchant ID "A3CSW47NAJXREI" and ASIN "B08CCQJZV8." Exhibit 2.

 

Bringpure filter (Exhibit 27 at 1)          '984 Patent (Exhibit 1 at Fig. 4)

Claim 1 further recites "a filter member." Exhibit 1 at 25:45. The filter assembly of each Bringpure filter houses a filter member for filtering water. The annotated image below indicates the black filter member housed inside a representative Bringpure filter assembly. *See also generally* Exhibit 30. The claimed "filter member" is synonymous with what the '984 Patent calls a "filtering member." *See* Exhibit 1 at 8:26-32, Fig. 7 (element 44).



Bringpure filter (Exhibit 27 at 2)          '984 Patent (Exhibit 1 at Fig. 7[11])

Claim 1 further recites "a housing body having an accommodating space formed therein to accommodate at least a portion of the filter member." Exhibit 1 at 25:4648. As images below show, each Bringpure filter product has a cylindrical plastic shell with a hollow interior to accommodate part of the filter member. *See also generally* Exhibit 30. The cylindrical shell corresponds to the claimed "housing body," and its hollow interior corresponds to the claimed "accommodating space." The filter member resides in the accommodating space of the cylindrical housing body. As the '984 Patent explains, "The housing body 42 may have a cylindrical shape (not limited thereto) to define a first accommodating space for accommodating the filtering member 44." Exhibit 1 at 8:33-35, Fig. 7 (element 42).

---

[11] Figures from the '984 Patent have been annotated with colors and in some cases excerpted to identify relevant components and enlarge the image.



Bringpure filter (Exhibit 27 at 3)  '984 Patent (Exhibit 1 at Fig. 7)

Claim 1 further recites "a housing cap coupled to an upper portion of the housing body." Exhibit 1 at 26:1-2. As the images below show, each Bringpure filter product includes a housing cap coupled to an upper portion of the housing body.[12] *See also generally* Exhibit 30. As the '984 Patent explains, "a housing cap 43 . . . may be coupled to an upper end of the housing body 42 to form an upper portion of the housing 41." Exhibit 1 at 8:28-32, Fig. 7 (element 43).

---

[12] The housing cap is fused to the housing body during manufacturing. In many images, the housing cap has been sawed through to separate it from the housing body.



Bringpure filter (Exhibit 27 at 4)        '984 Patent (Exhibit 1 at Fig. 7)

Claim 1 further recites, "the housing cap comprising an upper side and a lower side, wherein a diameter of the upper side is smaller than a diameter of the lower side." Exhibit 1 at 26:2-3. As the images below show, the housing cap of each Bringpure filter product has an upper side with a smaller diameter than the lower. *See also generally* Exhibit 30. Figure 7 of the '984 Patent similarly shows the diameter of the upper side of housing cap 43 is smaller than the diameter of its lower side. *See* Exhibit 1 at Fig. 7 (element 43).



Bringpure filter (Exhibit 27 at 5)        '984 Patent (Exhibit 1 at Fig. 7)

Claim 1 further recites, "a channel formed through the upper side and the lower side" of the housing cap. Exhibit 1 at 26:5-6. As the images below show, the housing cap of each Bringpure filter product is cylindrical and hollow. *See also generally* Exhibit 30. The hollow interior of the housing cap forms a channel through its upper and lower sides. Figures 7 and 9 of the '984 Patent similarly show a channel formed through the upper and lower sides of housing cap 43. *See* Exhibit 1 at Figs. 7, 9 (element 43). "The housing cap 43 includes an upper opening portion" through which a shaft can be inserted, and it "couple[s] to the upper opening portion of the housing body 42." Exhibit 1 at 8:37-45.





Bringpure filter (Exhibit 27 at 6)          '984 Patent (Exhibit 1 at Fig. 9 (excerpted))

Claim 1 further recites "a coupling projection projecting outwardly from an outer surface of the housing cap." Exhibit 1 at 26:7-8. As the image below indicates, the outer surface of the housing cap on each Bringpure filter product contains a plastic protrusion that extends outwardly to connect the filter assembly to a refrigerator. *See also generally* Exhibit 30. This plastic protrusion corresponds to the claimed "coupling projection." As the '984 Patent explains, "A coupling projection 433 may be provided on an outer circumferential surface of the upper portion of the housing cap 43." Exhibit 1 at 8:51-53, Figs. 7, 9 (element 433).

14



Bringpure filter (Exhibit 27 at 7)          '984 Patent (Exhibit 1 at Fig. 9 (excerpted))

Claim 1 further recites "an upper supporter accommodated in the channel, the upper supporter having a first filter inlet flow path to allow water to flow into the filter member." Exhibit 1 at 26:9-11. As the image below shows, each Bringpure filter product includes a white, plastic protrusion connected to the top of the black filter member. *See also generally* Exhibit 30. This white, plastic protrusion corresponds to the claimed "upper supporter." The channel formed by the hollow interior of the housing cap is shaped to accommodate this plastic protrusion. *See id.* Similarly, the '984 Patent explains, "the upper supporter 80 is capable of being accommodated in the second accommodating space in which the housing cap 43 is defined." Exhibit 1 at 10:25-34, Fig. 9 (element 80).



Bringpure filter (Exhibit 27 at 8)          '984 Patent (Exhibit 1 at Fig. 9 (excerpted))

15

█████████

The image above additionally shows that the upper supporter in each Bringpure filter product includes a hollow conduit. *See also generally* Exhibit 30. This conduit corresponds to the claimed "first filter inlet flow path" and allows water to flow into the black filter member. The '984 Patent similarly explains, "a first filter inlet flow path 872 extend[s] in a lower direction [from] the opened upper surface of the supporter extending portion 85." Exhibit 1 at 12:1618, Fig. 9 (element 872). "[W]ater which flows through the filter inserting portion 431 flows through the first filter inlet flow path 872 of the supporter extending portion 85 . . . ." *Id.* at 12:28-36.

Claim 1 further recites "a first connecting portion recessed inwardly from an inner circumferential surface of an upper end of the upper supporter." *Id.* at 26:11-13. As the exemplary image below indicates, the "upper supporter" (i.e., the white, plastic protrusion extending away from the black filter member) of each Bringpure filter product includes a recessed area around the circumferential portion of the tip. *See also generally* Exhibit 30. This recessed area allows the filter assembly to mate with the receiving portion of the refrigerator. The various surfaces of the upper supporter that define this recessed area correspond to the claimed "first connecting portion." As the '984 Patent similarly explains, "The first connecting portion 851 may be recessed toward the inside from the upper end of the supporter extending portion 85 . . . ." Exhibit 1 at 13:4548, Fig. 11 (element 851).



Bringpure filter (Exhibit 27 at 9)          '984 Patent (Exhibit 1 at Fig. 11)

Lastly, claim 1 recites "a pair of projecting portions disposed symmetrically and extending from the first connecting portion." Exhibit 1 at 26:14-15. As the images below show, each Bringpure filter product includes two plastic ridges that protrude out from the "first connecting portion" (i.e., from the recessed area at the tip of the "upper supporter"). *See also generally* Exhibit 30. These images also show the ridges are symmetrically disposed with respect to one another. *See id.* These two plastics ridges, which help align the filter assembly with the receiving portion of the refrigerator, correspond to the claimed "pair of projecting portions." As '984 Patent similarly explains, "a projecting portion 852 project[s] from a position which is opposite to the inner surface of the supporter extending portion 85." Exhibit 1 at 13:56-60, Fig. 11 (element 852).



Bringpure filter (Exhibit 27 at 10)        '984 Patent (Exhibit 1 at Fig. 11)

As shown below, the only relevant differences in the Pureza (Bringpure), Yunda, and Ecopure products are *immaterial* to the limitations of claim 1. As shown below, all three include "a pair of projecting portions disposed symmetrically and extending from the first connecting portion." *See* Exhibit 27 at 10; Exhibit 28 at 10; Exhibit 29 at 10.



Pureza Group                    Yunda Group                    Ecopure Group

███████████████

Thus, as described here and as shown in Exhibits 27-32, LGE is likely to show by a preponderance of evidence that the accused products of all Defendants in Exhibit 1 infringe claim 1 of the '984 Patent.

### 2. Defendants' attempts to argue non-infringement and invalidity do not rise to the level of a "substantial question" sufficient to defeat LGE's strong showing of likelihood of success

An accused infringer "can defeat a showing of likelihood of success on the merits by demonstrating a substantial question of validity or infringement." *Tinnus Enterprises, LLC*, 846 F.3d at 1202. Here, several Defendants do not raise ***any*** questions as to the infringement and validity of the '984 Patent, and the ones that attempt to do so fail to raise to the level of a "substantial question" sufficient to defeat LGE's strong showing of likelihood of success.

### a) Infringement

Defendants Shenzen Hangling E-commerce co., Ltd. d/b/a Best Belvita and Dongyang Zhangping Leather Co., Ltd., d/b/a Ice Water filters have not raised ***any*** question as to their infringement of the '984 Patent. D.I. 84. Neither have Defendants Express Parts !!!, GLACIERFRESH, Kozero Filter, or Pureza Filters. D.I. 33. In fact, those Defendants all but admit infringement, representing that their design "has to be exactly the same [as LGE's] down to the millimeter[.]" (July 9, 2021 Hr. Tr. at 16) and that it "would have been ontologically impossible [to show independent development] because the filter was ***intended*** to fit a single LG refrigerator model[.]" D.I. 90 at 3 (emphasis in original).

Defendants W&L Trading LLC d/b/a as AQUALINK, Top Pure (USA) Inc. d/b/a as ICE PURE; Tianjin Tianchuang Best Pure Environmental Science and Technology Co., Ltd. d/b/a as HEALTHY HOME~ d/b/a GOLDEN ICEPURE. and Yunda H&H Tech (Tianjin) Co., Ltd. d/b/a as PUREPLUS summarily contend in their interrogatory responses ███████████████

███████████████████████████████████████████████

██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ But other than listing those two claim elements, they fail to provide *any* analysis or arguments, much less evidence, explaining how those two limitations are not met. They do not even attempt to rebut the detailed infringement analysis LGE has presented in this case. Therefore, those Defendants have not shown a "substantial question" as to LGE's likelihood of success on infringement, despite having an opportunity to do so.

Lastly, Defendants Qingdao Ecopure Filter Co. Ltd., Qingdao Maxwell Commercial and Trading Company Ltd., and Qingdao Youniwei Trading Co., Ltd. attempt to dispute infringement based only on one claim element: "a pair of projecting portions disposed symmetrically and extending from the first connecting portion." D.I. 55 at 8. But their arguments not only lack merit, they fail to show a "substantial question" as to LGE's strong showing of likelihood of success on its infringement claims sufficient to defeat a preliminary injunction.

The Ecopure Defendants contend their filters do not have "a pair" of projecting portions and rely on a single embodiment in the '984 Patent specification as support in an attempt to add a limitation not found in the claims. D.I. 55 at 21. But the Federal Circuit, the binding authority on all patent cases, has repeatedly explained that the claims of a patent are not limited to the embodiments in the specification. *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019) ("We have also 'expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.'"); *see also Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004) ("Even when the specification describes only a single embodiment, the claims of the

patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using `words or expressions of manifest exclusion or restriction.'").

The Ecopure Defendants further contend that the claimed pair of projecting portions "must be **_symmetrical_**, which means 'exactly similar parts facing each other.'" D.I. 55 at 21 (emphasis in original). They then contend the pair of projecting portions in their filters are not "mirror images." *Id*. at 22. But again, nothing in the claims includes such requirements. The claim only requires that the pair of projecting portions be "**_disposed symmetrically_**." *See* Exhibit 1 at 26:14-15 (emphasis added). The word "symmetrically" modifies the word "disposed" not the phrase "a pair of projecting portions." Further, their own figure from their motion (on the left below) belies their arguments. As shown below, the Ecopure Defendants' infringing filters have a "first connecting portion" (the recessed area defined by the green and red surfaces on the left figure) and "a pair of projecting portions [blue] disposed symmetrically and extending from the first connecting portion," which is precisely what LGE has already established as shown in the figure on the right.



None of the Defendants have raised a "substantial question" as to LGE's strong showing of a likelihood of success on infringement. This is not surprising, given that the '984 Patent was drafted to specifically cover the filter design to fit LGE's refrigerators. Simply put, it is a lock

███████████

(refrigerator) and key (filter) configuration, and LGE has patented the key through the claims in the '984 Patent. Defendants copied that design. They cannot defeat that element of the preliminary injunction analysis.

### b) Validity

A statutory presumption of validity attaches to all issued United States patents. *See* 35 U.S.C. § 282(a). To raise a substantial question as to the validity of the '984 Patent, Defendants would need to "present[] an invalidity defense that [plaintiff] has not shown lacks substantial merit." *Id.* They fail to do so here.

To prove invalidity, Defendants need to show, by clear and convincing evidence, that the claim is anticipated or rendered obvious by the prior art, lacks written support, or has overly broad or incomprehensible scope. *See* 35 U.S.C. §§ 102, 103, 112. Mere preponderance of the evidence is not enough. Defendants have not produced any prior art (and LGE is aware of none) that would anticipate or render obvious claim 1 of the '984 Patent. Further, a review of the '984 Patent and claim 1 shows that claim 1 does not lack written support or suffer from issues relating to overbreadth or indefinite scope.

Defendants Shenzen Hangling E-commerce co., Ltd. d/b/a Best Belvita, Dongyang Zhangping Leather Co., Ltd., d/b/a Ice Water filters, Express Parts !!!, GLACIERFRESH, Kozero Filter, and Pureza Filters have not raised ***any*** questions as to the validity of the '984 Patent. D.I. 84. Defendants W&L Trading LLC d/b/a as AQUALINK, Top Pure (USA) Inc. d/b/a as ICE PURE; Tianjin Tianchuang Best Pure Environmental Science and Technology Co., Ltd. d/b/a as HEALTHY HOME~ d/b/a GOLDEN ICEPURE. and Yunda H&H Tech (Tianjin) Co., Ltd. d/b/a as PUREPLUS ████████████████

████████████████████

████████████████████

██████████

████████████████████████ But they again fail to provide **any**
analysis or arguments, much less evidence, explaining their position. And these are issues the
USPTO–an objective government body whose mission and specialty is to evaluate inventions for
patentability–already considered when granting the patent. Defendants, even with their
overwhelming interest to invalidate the patent, have been unable to produce anything close to
overcoming this presumption, let alone show a "substantial question" as to the validity of the
'984 Patent sufficient to defeat LGE's strong showing of likelihood of success.

Lastly, Defendants Qingdao Ecopure Filter Co. Ltd., Qingdao Maxwell Commercial and
Trading Company Ltd., and Qingdao Youniwei Trading Co., Ltd. attempt to contest validity
based on a piece of prior art **the U.S. Patent Office examiner already considered** during
prosecution and granted the patent, deciding that the prior art is not an invalidating. D.I. 55 at 23-
26. Specifically, they rely on U.S. Patent Number 10,071,326 by 3M to argue the '984 Patent is
anticipated. The publication for that 3M patent (Exhibit 34 (US 2017 / 0072347 A1), was one of
four references LGE voluntarily submitted to the patent examiner. *See* Exhibit 35. The patent
examiner considered this very reference during examination of the novelty and patentability of
the '984 Patent. *Id.* After the consideration, the examiner found the '984 Patent novel and
patentable, indicating that the USPTO determined that the '326 reference is different than the
water filter of the '984 Patent.

The Federal Circuit has explained "where a party only relies on prior art considered by an
examiner in its invalidity contentions, that party has the burden to 'overcome[e] the deference
that is due to a qualified government agency presumed to have properly done its job, which
includes one or more examiners who are assumed to have some expertise in interpreting the
references and . . . whose duty it is to issue only valid patents.'" *Stone Basket Innovations, LLC*

*v. Cook Medical LLC*, 892 F.3d 1175, 1180-81 (Fed. Cir. 2018). A legal presumption of validity that must be overcome by clear and convincing evidence attaches here. But the Defendants do not overcome that deference with evidence. They simply rely on generalized and unsupported attorney argument, and without evidentiary support, their attorney arguments collapse.

Accordingly, Defendants failed to raise any "substantial questions" as to the validity of the '984 Patent sufficient to defeat LGE's strong showing of likelihood of success.

### B.     Defendants' actions have and will continue to irreparably harm LGE

LGE has and will continue to suffer irreparable harm by Defendants' infringing sales in the absence of preliminary injunction stopping their infringing conduct. "Harm is irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Park v. O-Sung & Co.*, No. 97 C 0924, 1997 U.S. Dist. LEXIS 10967, at *11-12 (N.D. Ill. July 23, 1997) (internal quotations omitted). Here, such irreparable harm has resulted and will continue to result from the loss of exclusivity guaranteed by LGE's patent rights, the loss of market share, and the immeasurable damage to the goodwill and reputation of LGE that Defendants' infringement has and will continue to cause. Exhibit B at ¶¶ 9-10.

As the Federal Circuit has explained, "[t]he essential attribute of a patent grant is that it provides a ***right to exclude*** competitors from infringing the patent. 35 U.S.C. § 154(a)(1) (2000). [and i]n view of that right, ***infringement may cause a patentee irreparable harm*** not remediable by a reasonable royalty." *Acumed LLC*, 551 F.3d at 1328–29 (emphasis added). Here, LGE designed and developed the refrigerators that the filters at issue go into as well as its own genuine filter. It then protected that water filter lock and key design by seeking a utility patent that describes and claims its structural features. The very purpose of LGE's '984 Patent is to exclude others from infringing that patent. Yet, without permission, Defendants have sold and continue to sell unauthorized water filters, causing LGE irreparable harm.

Further, for decades, LGE has worked and invested large amounts of money and resources to build goodwill and credibility among the public for its innovative line of high-quality home appliance products, including refrigerators. Exhibit A at ¶¶ 3-4. Given LGE's significant investments in innovation, it should come as no surprise that LGE's filters are priced higher than Defendants'. In fact, Defendants often sell their infringing water filters at ***one fifth the price*** of a genuine LGE filter. S*ee generally* Exhibits 2-19. As the Federal Circuit has found "[p]rice erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis in Vitro, Inc. v. CellzDirect, Inc*. 664 F.3d 922, 930 (Fed. Cir. 2012) (affirming a N.D. Ill. grant of a preliminary injunction in a patent infringement case). In *Celsis in Vitro*, the Federal Circuit affirmed the district court's findings of irreparable harm based on "price erosion, damage to ongoing customer relationships, loss of customer goodwill (*e.g.,* ***when an effort is later made to restore the original price***), and loss of business opportunities." *Id*. (emphasis added). The same is true here. Defendants are eroding LGE's price and market share based on their heavily discounted products. S*ee generally* Exhibits 2-19. Further, as Defendants' own reviews on Amazon.com show, customers have purchased and will continue to purchase the infringing products based on price. *See, e.g*., Exhibit 36 (including highlighted customer reviews stating that "These are perfect replacement water filters for a refrigerator. They fit perfectly, have the same specs and are one third the cost. I will continue buying these and stop wasting money on seriously over priced OEM [Original Equipment Manufacturer, i.e., in this situation, LGE]"); *see also Tinnus Enterprises LLC*, 846 F.3d at 1207 (finding that evidence of customers liking the off brand more than the brand name established harm to the patentee's reputation and status as an innovator). Unless Defendants are precluded from continuing to sell their infringing filters, LGE will continue to suffer irreparable harm,

████████████

based at least on price erosion, damage to ongoing customer relationships, and loss of customer goodwill, just as in *Celsis in Vitro*.

Moreover, LGE's customers trust their families' health and wellbeing to the safety of its products, and fundamental to those concerns is clean, safe, filtered drinking water. LGE ensures that its LT1000P filter meets proper safety standards, including the standards established by NSF. LGE's filters remove "99.9% of Bisphenol A (BPA), 99.9% of asbestos and almost all mercury, lead and benzene" and also "some herbicides, pesticides, pharmaceuticals and insect repellant that can be found in water." Exhibit 3 at 1. Because Defendants do not adhere to the same standards (*see* Section II., B., *supra*), their sale of water filters for LGE refrigerators that purport to be, but are not, safe for customers causes irreparable harm to LGE's reputation for safe, high-quality home appliances.

It takes years to build a reputation for quality in the home appliance market. Defendants threaten to erase LGE's efforts through an onslaught of inferior products designed to dupe consumers into using them to replace genuine LGE filters in their refrigerators. These filters can harm the refrigerator and, in turn, damage LGE's reputation and goodwill. Exhibit B at ¶¶ 9-10. This will irreparably harm LGE's reputation among consumers and will likely invite even further infringement by Defendants and others. Exhibit B at ¶¶ 9-10. Therefore, there can be no genuine dispute that Defendants' infringing sales have and will continue to irreparably harm LGE.

**C.     There is no adequate remedy at law to address LGE's irreparable harm**

The harm to LGE's reputation and goodwill along with LGE's lost market share and exclusivity cannot be quantified. Every sale of an infringing product displaces the sale of a genuine LG LT1000P product. And in this case, based on the discovery Defendants have produced to date, they have sold at least ██████████████ since the issuance of the '984 Patent. That is at least ████████████ that LGE would have sold but did not due to

26

Defendants' infringement. Moreover, those sales caused LGE to lose market share and the exclusivity provided and guaranteed by the '984 Patent. Relief for such harm is not possible absent an immediate injunction. *See* Exhibit B at ¶ 8. As the court in *Polymer Technologies, Inc. v. Bridwell* noted,

> Competitors change the marketplace. Years after infringement has begun, it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option.

103 F.3d 970, 975-76 (Fed. Cir. 1996); *see also Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013) ("[M]ere damages will not compensate for a competitor's increasing share of the market, a market which [the patentee] competes in, and a market that [the patentee] has in part created with its investment in patented technology."); *Sanofi-Avenits Deutschland GmbH v. Glenmark Pharm. Inc.*, 821 F.Supp.2d 681, 694 (D.N.J. 2011) ("[E]very sale of Defendants' [product] is a lost sale by Plaintiffs," supporting injunction.). Moreover, because LGE's filters are designed to be replaced every six months, customers who purchase infringing filters from Defendants will continue purchasing additional infringing filters over and over. *See, e.g.*, Exhibit 36 (including highlighted customer reviews stating that "These are perfect replacement water filters for a refrigerator. They fit perfectly, have the same specs and are one third the cost. I will continue buying these and stop wasting money on seriously over priced OEM").

Because there is no adequate remedy at law sufficient to compensate LGE for the irreparable harm it has and will continue to suffer, a preliminary injunction is necessary and warranted.

### D.    The balance of equities favors LGE

With the "balance of equities" inquiry, a court "assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010). In this case, the balance of hardships favors LGE.

In analyzing this factor, courts apply a "sliding scale: [t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *21-22 (N.D. Ill. Mar. 27, 2013) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. Inc.*, 549 F.3d 1079, 1082 (7th Cir. 2008) (alteration in original)).

As shown above, LGE's request for injunctive relief is strong both on the merits and on the equities. On the merits, a simple visual examination of the accused products confirms the strength of LGE's infringement case. Each of the products listed in Schedule A meets every limitation recited in claim 1 of the '984 Patent. *See generally* Exhibits 27-32.

Separate from the issue on the merits, which reduces the level of irreparable harm necessary to secure an injunction, the equities would still favor an injunction. As explained above, LGE has and will continue to suffer irreparable harm in the marketplace absent a temporary restraining order and injunction. *See Nike, Inc. v. Meitac Int'l Enter. Co.*, 2:06-CV-00934-PMP-PAL, 2006 U.S. Dist. LEXIS 94662, *3 (D. Nev. 2006) ("Nike will be severely handicapped in its ability to prevent further importation of Accused Products, thereby destroying any potential of preserving the status quo pending a resolution of this case on its merits."); *see also Cal. Medical Prods., Inc. v. Emergency Medical Prods., Inc.*, 796 F. Supp. 640, 647 (D.R.I. 1992) ("Denial of the motion for injunctive relief, therefore, would cause considerable harm to

28

[the patentee's] reputation and threaten its market position. . . . Accordingly, the Court finds that the potential harm to [the patentee] outweighs the potential harm to [the defendant].").

Thus, the balance of equities weighs strongly in favor of granting a preliminary injunction.

### E. Public interest favors a preliminary injunction

The patent laws reflect a fundamental bargain between inventors and society: Inventors are entitled to profit from a period of exclusive use of their inventions in exchange for the disclosure of their ingenuity. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1354 (Fed. Cir. 2010). Defendants' continued infringement of the '984 Patent undermines that social contract, illicitly and literally profiting from LGE's ingenuity and devaluing patent rights as a whole. This is why public policy favors protecting the rights secured by a valid patent. *Cobraco Mfg. Co. v. Valley View Specialties Co.*, No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958, at *8 (N.D. Ill. Jan. 19, 1990).

"[T]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015). The grant of an injunction would further the public's confidence in the patent and judicial system and provide incentives for inventors and corporations to continue developing innovative products and patenting new ideas without the fear that they will be unable to stop potential infringers.

The public also has a strong interest in having water filters that provide reliably safe drinking water. Lead in drinking water poses a significant risk, particularly to children, and legacy lead service pipes are a problem across the country, including in Chicago. *See* Exhibit 37, WTTW, Mar. 24, 2021 ("Chicago Has More Lead Service Pipes Than Any Other US City, Illinois the Most of Any State"). Legitimate, verified water filtration, such as that provided by

LGE's product (and as shown above not provided by Defendants), can reduce the lead in drinking water. *See* Exhibit 38.

An injunction will not harm the public because removing the accused products from the marketplace will not cause a shortage of LT1000P-compatible replacement water filters. Ample sources of legitimate and authorized replacement water filters would remain available from LGE's online store, big box retail locations, and through the hundreds of authorized LGE home appliance repair dealers across the United States. *See, e.g.*, Exhibit B at ¶¶ 5-6. The public will be able to purchase these authorized devices even if Defendants' sales immediately halt. *See Nat'l Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) ("If an injunction makes the [defendant's product] unavailable, the public has plenty of substitutes, including [plaintiff's products].").

Accordingly, the public interest favors granting injunctive relief.

## V.     CONCLUSION

In view of the foregoing, LGE respectfully requests that this Court enter a preliminary injunction precluding the remaining Defendants identified in Schedule A from continuing to import, offer for sale, sell, transfer, or otherwise dispose of replacement water filters that infringe the '984 Patent.

DATED: July 26, 2021                     Respectfully submitted,

                                         */s/ Aidan C. Skoyles*

                                         VIA LEGAL, LLC
                                         Vladimir I. Arezina (IBN 6276348)
                                         vladimir@arezina.com
                                         1237 W. Madison St.
                                         Chicago, IL 60607
                                         Telephone: (312) 574-3050

███████████

FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Parmanand K. Sharma (*pro hac vice)*
anand.sharma@finnegan.com
Aidan C. Skoyles (*pro hac vice*)
Aidan.skoyles@finnegan.com
J. Preston Long (*pro hac vice*)
j.preston.long@finnegan.com
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Charles H. Suh (*pro hac vice*)
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190
(571) 203-2700

*Counsel for Plaintiffs*
*LG Electronics Inc. and*
*LG Electronics Alabama, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 26, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

*/s/ Aidan C. Skoyles*